## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Susan Dapkus, | |
| Plaintiff, | Civil No. 3:19-cv-01583-KAD |
| v. | |
| Arthur J. Gallagher Service Co., LLC, | January 11, 2021 |
| Defendant. | |

## RULING ON DISCOVERY MOTIONS [ECF Nos. 35, 47, 53]

This is an action brought under the Family and Medical Leave Act ("FMLA"). (Compl., ECF No. 1.) The Defendant, Arthur J. Gallagher Service Co., LLC ("Gallagher"), hired the Plaintiff, Susan Dapkus ("Dapkus"), as a technical assistant in 2014. (Ans. & Aff. Defs., ECF No. 6, ¶¶ 8, 9.) Over the next few years, Dapkus took intermittent FMLA leave in connection with a "serious health condition." (ECF No. 1, ¶¶ 15, 16.) By mid-2018, however, Gallagher became suspicious that she was taking time off not because she was truly ill, but rather because she was supervising a construction project at her home. (*See, e.g.,* ECF No. 39, at 1.) Gallagher asked Dapkus to document a June 29, 2018 absence and, when she allegedly failed to do so, it terminated her employment. (ECF No. 6, ¶¶ 20, 28.) Dapkus then filed this lawsuit, claiming FMLA discrimination, retaliation and interference. (ECF No. 1.)

In discovery, Gallagher sought information on Dapkus's whereabouts on June 29, 2018 and her reasons for taking the day off. Dapkus's complaint alleged that she had an appointment with a doctor that day, but canceled due to a migraine flare-up. (*Id.* ¶¶ 17, 18.) Gallagher suspects that the appointment and the cancelation are fictions, fabricated to conceal that Dapkus took the

day off for reasons that would not pass muster under the FMLA.  (*See* ECF No. 39, at 1.)  After other discovery revealed that the "doctor" referenced in the complaint was a family therapist named Kate McGetrick ("McGetrick"), Gallagher tried to discover Dapkus's and McGetrick's phone records to explore whether an appointment was actually made and canceled.  Gallagher served requests for production of Dapkus's phone records under Rule 34 (*see* ECF No. 47), and subpoenaed McGetrick's records under Rule 45.  (*See* ECF No. 35.)  The subpoena also directed McGetrick to appear for her second deposition in the case.  (*Id.*)

These and other developments led to three hotly contested discovery motions.  Gallagher has moved for an order compelling Dapkus to comply with the requests for production of her phone records and certain other documents, along with an award of attorney's fees.  (ECF No. 47.) McGetrick has moved for an order quashing the above-referenced subpoena, both as to the request that she produce her phone records and the demand that she appear for a second deposition.  (ECF No. 35.)  McGetrick has also moved to quash a subpoena that Gallagher served on her cell phone carrier after she indicated that she no longer had her own copies of her phone records from 2018. (ECF No. 53.)   Judge Dooley referred the three motions to the undersigned.

The Court has considered Gallagher's, Dapkus's and McGetrick's written submissions (ECF Nos. 35, 39, 41, 42, 47, 53, 56, 57) and the remarks made by their counsel during two teleconferences.  (ECF No. 40, 55.)  It has also considered the fact that Gallagher recently obtained Dapkus's phone records through subpoenas served on her carriers while the motions were pending, as confirmed by counsel during the most recent of the two teleconferences.  For the following reasons, Gallagher's Third Motion to Compel (ECF No. 47) is **DENIED**, and McGetrick's First Motion to Quash (ECF No. 35) is **GRANTED**.  McGetrick's Second Motion to Quash (ECF No.

53) is **GRANTED IN PART AND DENIED IN PART**.  It is granted to the extent that it seeks

modification of the subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(B)(i), but otherwise denied.

### I.    Gallagher's Third Motion to Compel, ECF No. 47

Gallagher has moved for an order directing Dapkus to comply with three sets of discovery

requests that principally – although not exclusively – inquired into her reasons for missing work

on June 29, 2018.  Specifically, Gallagher seeks an order directing full compliance with:  (1)

Request Nos. 4 and 5 from its First Set of Requests for Production, dated March 23, 2020, which

sought production of all documents supporting her claim to have made and then canceled a doctor's

appointment on June 29, 2018 (ECF No. 24, at 22); (2) Request No. 15 from its Second Set of

Requests for Production, dated September 21, 2020, which sought all documents evidencing

Dapkus's whereabouts on June 29, 2018 (ECF No. 47-2, at 11); and (3) Request Nos. 1, 2 and 3

from its Third Set of Requests for Production, dated October 24, 2020, which inquired after

documents and communications between Dapkus and McGetrick.   (ECF No. 47-2, at 22.)

Gallagher had filed two earlier discovery motions (ECF Nos. 14, 21), and accordingly it styled this

motion as its Third Motion to Compel.  (ECF No. 47.)

Dapkus opposes the motion.  (ECF No. 56.)  She generally contends that, although she

asserted a number of objections to several of the above-referenced discovery requests, she

nevertheless produced all responsive documents in her possession.  (*E.g., id.* at 6 ("Plaintiff

produced all the documents she possesses in response to Second Set Request No. 15.").)  She adds

that she "cannot produce what she does not have" (*id.*), and she says that with respect to "[r]ecords

that she did not possess (i.e. June and July 2018 phone records) plaintiff provided defendant with

the necessary information to subpoena the records."  (*Id.* at 4.)  The Court will address these

contentions with respect to each of the three sets of discovery requests, and in light of the fact that Gallagher has obtained Dapkus's phone records from her carriers in the meantime.

   *a.   Request Nos. 4 and 5 in the First Set of Requests*

Gallagher asks the Court to compel Dapkus to produce all documents responsive to Request Nos. 4 and 5 from its First Set of Requests for Production.  These Requests "ask for documents or communications that support Plaintiff's claims that she had an appointment on June 29th or that she cancelled her appointment on June 29th . . . ."  (ECF No. 47-1, at 6.)  Gallagher suspects that responsive documents will include not only "Plaintiff's June and July 2018 phone records," but also "communications, including emails [and] text messages."  (*Id.* at 7.)

In her objection, Dapkus represents that she has produced all documents responsive to Requests Nos. 4 and 5 and provided Gallagher with the necessary information to subpoena her phone records from her cell phone carrier.  (ECF No. 56, at 4.)  She further represents that on December 14, 2020, she sent a supplemental response to Gallagher "certifying that she has no additional documents responsive to Request Nos. 4 and 5."  (*Id.*)  In other words, she certified that she does not have the "communications, including emails [and] text messages" that Gallagher suspected she had.

Based on these representations, the Court concludes that Dapkus has met her discovery obligations with respect to Request Nos. 4 and 5 from the First Set.  Responding parties have "no obligation to produce documents that do not exist . . . ."  *Schwartz v. Mktg. Pub. Co.*, 153 F.R.D. 16, 21 (D. Conn. 1994).  "Generally, a party's good faith averment that the items sought simply do not exist . . . should resolve the issue of failure of production since one cannot be required to produce the impossible."  *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (citations and internal quotation marks omitted).

Because Dapkus has certified that no additional responsive documents exist, Gallagher bears the burden of "cit[ing] to specific evidence" to challenge that assertion.  *Id.*  Gallagher has not cited any such evidence.  Accordingly, Gallagher's Third Motion to Compel is **DENIED AS MOOT** with respect to Request Nos. 4 and 5 in its First Set of Requests for Production dated March 23, 2020.

### b.  *Request No. 15 in the Second Set of Requests*

Gallagher next asks the Court to compel Dapkus to produce all documents responsive to Request No. 15 from its Second Set of Requests for Production.  That request sought "documents or communications evidencing Plaintiff's whereabouts on June 29th . . . ."  (ECF No. 47-1, at 7.)  In response, Dapkus represents that she has provided "all the documents she possesses in response to Second Set Request No. 15."  (ECF No. 56, at 4.)  As noted above, Dapkus is not required to produce what she does not have.  Accordingly, Gallagher's motion is **DENIED AS MOOT** with respect to Request No. 15 in its Second Set of Requests for Production dated September 21, 2020.

In contrast to Request Nos. 4 and 5 from the First Set, however, Dapkus apparently has not provided Gallagher with a sworn certification that she has no additional documents responsive to Request No. 15 from the Second Set.  The denial of this portion of Gallagher's motion is therefore without prejudice to renewal in the event that Dapkus does not provide such a certification to Gallagher by January 18, 2021.

### c.  *Request Nos. 1, 2 and 3 in the Third Set of Requests*

Gallagher served a third set of requests for production on Dapkus on October 24, 2020. (ECF No. 47-2, at 18.)  The third set was comprised of three requests that sought "documents and communications between Plaintiff and McGetrick that are the basis for the allegations in Plaintiff's complaint and are germane to Defendant's defense."  (ECF No. 47-1, at 8.)  Dapkus timely served

responses and objections on November 22, 2020.  (ECF No. 47-2, at 16.)  Although she objected

to the requests on grounds of overbreadth, lack of proportionality and irrelevance, she produced

thirty-three pages of responsive documents "[s]ubject to and without waiving" those objections.[1]

(*Id.* at 22.)

Two days later, Gallagher's counsel sent an e-mail to Dapkus's counsel.  (ECF No. 56-2.)

In the e-mail, Gallagher contended that Dapkus's responses were "deficient in two ways."  (*Id.*)

First, Gallagher noted that as of that date, Dapkus still had not "obtained her phone records for the

June/July 2018 time period."  (*Id.*)  Second, Gallagher asserted that Dapkus's production did not

include communications between her and McGetrick that occurred between July 8th and 14th, 2018

– communications that were known to exist because they had been referenced in other e-mails.

(*Id.*)  Within an hour, Dapkus's counsel responded by providing Gallagher with the information

necessary to subpoena the phone records.  (*Id.* at 4-7.)  He also explained that "Plaintiff does not

have any emails between herself and McGetrick between July 8-14, 2018."  (*Id.* at 2.)

Gallagher nevertheless moved to compel later that day.  (ECF No. 47.)  Its motion sought

an order compelling Dapkus to "cure deficiencies in her responses to . . . Defendant's Third Set of

Requests for Production."  (ECF No. 47, at 1.)  And its memorandum of law identified those

deficiencies as the same two issues discussed in the e-mail chain earlier that day:  "First, several

---

[1]     Gallagher's third set of requests sought production of responsive communications that "occurred from March 1, 2018 to the present" – in other words, over a more than two-year period stretching from March, 2018 to October, 2020.  (ECF No. 47-2, at 22.)  Dapkus's thirty-three-page production is evidently limited to communications that took place in June and July of 2018.  (ECF No. 56, at 2.)  At the second of the Court's two teleconferences, Dapkus's counsel explained that her overbreadth, non-proportionality and lack of relevance objections are principally if not exclusively objections to the temporal scope of the requests.  The Court will not address these objections because it does not understand Gallagher to be seeking an order overruling them.  (*See* ECF No. 47 (not seeking an order compelling production of all documents responsive to third set of requests for production, but rather only an order that Dapkus "cure" certain "deficiencies," and not listing the temporal scope of Dapkus's production as one of those "deficiencies").)

communications referenced emails or communications that occurred between July 8 – 14, 2018. These communications were not produced.  Second, Plaintiff testified that she spoke to McGetrick by phone in June/July 2018 and testified that she cancelled the June 29ᵗʰ appointment by phone. No records of any phone calls in this time period were produced."  (ECF No. 47-1, at 8.)

The Court concludes that Dapkus met her discovery obligations by providing Gallagher with sufficient information to subpoena the phone records and by representing that she does not possess any e-mails between herself and McGetrick from the July 8 – 14, 2018 time period.  This portion of Gallagher's motion is therefore **DENIED AS MOOT.**  As with Request No. 15 from the Second Set, however, the Court notes that Dapkus has not put her representation into the form of a sworn certification that she does not possess additional documents responsive to the Third Set. The denial is therefore without prejudice to renewal of the motion in the event that Dapkus does not certify, by January 18, 2021, that she has no additional written communications between herself and McGetrick dated on or between July 8 and July 14, 2018.

### d.  Attorney's Fees

Gallagher asks the Court to award "attorneys' fees associated with its filing of the present Motion to Compel."  (ECF No. 47-1, at 8-9.)  It argues that there was "no basis for or argument in support of Plaintiff's disregard for her obligations under this Court's prior order of compliance, the Federal Rules of Civil Procedure, and the District of Connecticut Local Rules."  (*Id.* at 9.)  It adds that it "should not be obligated to incur the costs and fees associated with continually compelling Plaintiff to fulfill her discovery obligations."  (*Id.*)

Gallagher is correct that discovery in this case has been unusually prolonged and difficult. When Dapkus neither made her initial automatic disclosures under Rule 26(a) nor timely responded to Gallagher's First Set of Interrogatories and Requests for Production, Gallagher was

constrained to file a motion to compel on May 8, 2020.  (ECF No. 14.)  Judge Dooley ordered

Dapkus to respond to the First Set without objection by May 31, 2020 – the "prior order of

compliance" referenced above.  (ECF No. 18.)  Gallagher contends that Dapkus *still* had not

complied with those requests months later, necessitating the filing of a second motion to compel

on October 9, 2020.  (ECF No. 21.)  That motion remains pending before Judge Dooley, and it

also includes a request for an award of attorneys' fees.

The question before the undersigned, however, is not whether Dapkus's overall discovery

conduct merits an award of fees, but rather whether such an award is the proper response to her

conduct with respect to the three specific sets of discovery requests at issue here.[2]  The Court

concludes that an award of attorneys' fees would be inappropriate in this instance.  Under the

Federal Rules of Civil Procedure, there are two circumstances in which "the court must, after

giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion

. . . to pay the movant's reasonable expenses in making the motion, including attorney's fees."

Fed. R. Civ. P. 37(a)(5)(A).  The first is when the motion to compel "is granted," and the second

is when the "requested discovery is provided after the motion was filed."  *Id.*  In this case, neither

circumstance applies.  The Court has not granted Gallagher's motion, nor is this a situation in

which Dapkus resisted discovery only to provide it after Gallagher filed the motion.  To the

contrary, the record demonstrates that Dapkus provided Gallagher with the information necessary

to subpoena the phone records – and with a representation that she possessed no further responsive

---

[2]      Under the Federal Rules of Civil Procedure, litigants can be awarded attorney's fees for
the expense of seeking an order compelling discovery, *see* Fed. R. Civ. P. 37(a)(5)(A); or for the
expense associated with a party's failure to comply with a previous court order.  *See* Fed. R. Civ.
P. 37(b)(2)(C).  The Court interprets Gallagher's motion for attorney's fees as the former, as
Gallagher's motion for attorney's fees caused by Dapkus's alleged non-compliance with the May
13, 2020 order (ECF No. 18) is currently pending before Judge Dooley.  (ECF No. 21-1, at 9-10.)

documents – before the motion was filed.  (*See* ECF No. 56-2 (demonstrating that Dapkus provided responses by 11:47 a.m. on November 24, 2020); ECF No. 47 (motion filed at 4:01 p.m. that day).) Rule 37(a)(5)(A) therefore does not apply, and Gallagher's request for an award of attorney's fees is **DENIED** accordingly.

## II.    McGetrick's Motions to Quash, ECF Nos. 35 and 53

### a.    *Factual background*

After learning that McGetrick was the "doctor" referenced in paragraph 17 of Dapkus's complaint, Gallagher sought discovery from her.  It began by subpoenaing her records of her treatment sessions with Dapkus, which McGetrick produced in October, 2020.  (ECF No. 35, at 2.) Gallagher then deposed McGetrick on November 10, 2020.  (*Id.*)  The subpoena for treatment records evidently did not include any request for phone records, however, and accordingly Gallagher served a follow-up subpoena seeking those phone records on November 15, 2020.  (*Id.* at 1; *see also* ECF No. 35-1) (hereinafter the "November 15 Subpoena").  The November 15 Subpoena also purported to command McGetrick to attend a second deposition only three days later, on November 18, 2020.  (*Id.*)

McGetrick moved to quash the November 15 Subpoena.  (ECF No. 35.)  With respect to the portion of the subpoena that sought production of her phone records, she objected on three principal grounds.  First, she asserted that "the document production sought is overly broad and unduly burdensome."  (*Id.* at 1.)  She represented that she did "not have possession of her cell phone records, showing all calls made and received, from the summer of 2018," and she argued that she "should not be required to obtain them from her phone company."[3]  (*Id.* at 3-4.)  Second,

---

[3]     In the first of its two teleconferences, the Court asked McGetrick to explain in her reply brief the burdens that would be involved in obtaining the phone records.  In particular, the Court asked her to explain whether she could easily obtain the records by logging onto her account on

McGetrick objected on the ground that "the information sought is equally available from the plaintiff." (*Id.* at 1.)  Third, she argued in a single sentence that discovery of her phone records would be "inappropriate in that the records will contain information regarding *other therapy clients* and personal information unrelated to the case." (*Id.* at 4 (emphasis in original).)  With respect to the deposition component of the subpoena, McGetrick objected that a second deposition would be "unreasonable and oppressive" in light of the fact that she already sat for a full-day session. (*Id.* at 4-5.)  She also pointed out that "Rule 30(a)(2)(A)(ii) requires a party to obtain leave of court to depose a person when the deponent has already been deposed in the case," and she added that "[s]uch permission has not been requested, much less obtained." (*Id.* at 4.)

Gallagher subsequently obtained Dapkus's phone records through subpoenas served on her carriers, but it still seeks discovery of McGetrick's records.  During the second of its two teleconferences, the Court inquired about why Gallagher would need McGetrick's phone records if it has already obtained Dapkus's.  Gallagher's counsel explained that it would need the phone records to protect itself against potential changes in Dapkus's testimony.  Dapkus testified at her deposition that her June 29, 2018 calls to McGetrick would have been made from one of two telephone numbers.  Gallagher reasoned that if Dapkus were to remember at trial that she actually made the call from some third number – say, her spouse's – it would need McGetrick's phone records to rebut that claim.  For this reason, after hearing McGetrick say that she no longer had her own copies of her phone records from 2018, Gallagher subpoenaed them from her carrier, Verizon Wireless.  (ECF No. 53-1) (the "Verizon Subpoena").

---

the carrier's website.  In her reply brief, however, McGetrick explained that the records are too old to be accessible through her online account.  (ECF No. 41, at 1-2.)

McGetrick then moved to quash the Verizon Subpoena.  (ECF No. 53.)  She contends, in substance, that since she has "already been fully deposed by the parties and produced records pursuant to prior document requests," Gallagher should not be conducting any further discovery into her affairs, even if that discovery is served on her cell phone carrier rather than herself.  (*Id.* at 1.)  She asserts that "the document production currently sought is overly broad," inasmuch as it seeks "to determine whether the Plaintiff was actually in contact with McGetrick in June 2018" yet asks for phone records from July as well as June.  (*Id.* at 1, 4.)  She also argues – as she did in the motion to quash the November 15 Subpoena – that "the information sought is equally available from the plaintiff."  (*Id.* at 1.)  Finally, she repeats her earlier claim that the requested discovery is "inappropriate in that the records will contain information regarding *other therapy clients* and personal information unrelated to this case."  (*Id.* at 4 (emphasis in original).)

Although McGetrick did not use the word "modify" in her motion to quash the Verizon Subpoena, the Court construes her motion as seeking modification pursuant to Fed. R. Civ. P. 45(d)(3)(B)(i) in the alternative.  She argues that "[w]hile a need for [her] phone records has not been demonstrated . . . should production of [those] records become necessary, the disclosure should be limited to any calls to or from the plaintiff."  (*Id.* at 5.)  She adds that "[a]s the cell phone was also used as [her] business phone for her therapy practice, this would protect the information of [her] other clients who have no involvement or connection to this litigation."  (*Id.*)  She therefore requested that "any subpoena served on Verizon by the defendant" be modified to "direct production of the records to" McGetrick or her attorney so that she may "review and redact the records prior to production."  (*Id.*)  Despite McGetrick's apparent willingness to at least contemplate a modified subpoena, she and Gallagher have not reached a negotiated resolution to the two motions, and the Court will now decide them.

11

### b. *Motion to Quash the November 15 Subpoena (ECF No. 35)*

Rule 45 provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). The onus is on the movant to show that the burden of complying with the subpoena is "undue." *See Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) ("The burden of persuasion in a motion to quash a subpoena is borne by the movant."). In considering whether a subpoena imposes an undue burden, courts "weigh[] the burden to the subpoenaed party against the value of information to the serving party." *Jackson v. AFSCME Local 196*, 246 F.R.D. 410, 412 (D. Conn. 2007).

In this case, McGetrick has shown that the burden of complying with the November 15 Subpoena outweighs the value of the requested information. She has represented that she no longer has her own copies of her 2018 phone records, and that they cannot be easily obtained by logging onto her online Verizon account. (ECF No. 41, at 1-2.) She also explains that she has already sat for a full-day deposition, and she says that it would be burdensome for her to sit for another one.[4] (ECF No. 35, at 1-2.) On the other side of the balance, the value that Gallagher observes in having *McGetrick's* phone records – as opposed to Dapkus's – is contingent on Dapkus changing her testimony. Because the burden to McGetrick in complying with the November 15 Subpoena would be meaningful, and because the principal value of the subpoenaed information to Gallagher depends on contingencies that have yet to occur, the Court grants McGetrick's motion to quash it.

---

[4]     She is also right to note that the deposition portion of the subpoena was improper under Rule 30(a)(2)(A)(ii), which requires leave of court if "the deponent has already been deposed in the case."

### c. *Motion to Quash the Verizon Subpoena (ECF No. 53)*

In contrast to the November 15 Subpoena, McGetrick does not have a valid burdensomeness objection to the Verizon Subpoena.  As Gallagher correctly notes, any burden in complying with the subpoena would fall on Verizon, not McGetrick.  (ECF No. 57, at 5-6.)  And it is well established that a person lacks standing to assert burdensomeness objections to a subpoena served upon another person.  *See, e.g., Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-Civ.-1590 (LTS/HBP), 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) ("A party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden.").  Ordinarily, a person has standing to object to a subpoena only if she has some personal right or privilege in the subpoenaed documents.  *Doe v. Town of Greenwich,* No. 3:18-CV-01322 (KAD), 2020 WL 2374990, at *3 (D. Conn. Apr. 21, 2020) ("An objecting party lacks standing to challenge a subpoena absent a showing that the objecting party has a personal right or privilege regarding the subject matter of the subpoena." (internal quotation marks omitted)).

Yet burdensomeness is not McGetrick's only objection.  She also objects to the Verizon Subpoena on the ground that "the records will contain information regarding *other therapy clients* and personal information unrelated to this case."  (ECF No. 53, at 4 (emphasis in original).)  Although the phone at issue is her personal phone, she represents that it "was also used as [her] business phone for her therapy practice."  (*Id.* at 5.)  She therefore requests that if the Court does not grant her motion to quash, it modify the subpoena to "protect the information of [her] other clients who have no involvement or connection to this litigation."  (*Id.*)

A well-reasoned case holds that a medical professional's interests in the confidentiality of her patient communications suffices both to confer standing to object to a subpoena served on her cell phone provider, and also to modify the subpoena to protect those interests.  In the medical

malpractice case of *Syposs v. United States*, the plaintiff served a subpoena on a non-party doctor's

cell phone carrier for records of his calls with the defendant doctor.   181 F.R.D. 224, 226

(W.D.N.Y. 1998).   The defendant moved to quash the subpoena, and the plaintiff objected on the

ground that the defendant lacked standing to bring it – and also on the ground that neither the

defendant nor the non-party doctor had a sufficient privacy interest in "a cellular telephone call or

in the numbers recorded by the telephone company."   *Id.* at 226-27.   The court noted, however,

that "some of [the non-party doctor's] patients' phone numbers may be among the items of

information which would be revealed if the subpoena is enforced."   *Id.* at 226.   It held that the

doctor "maintain[ed] a legitimate interest in preserving the confidentiality of the records against

disclosure," and therefore had standing to "seek the relief requested."[5]   *Id.* at 227-28.   Moreover,

records of his "out-going telephone calls on his cellular phone qualif[ied] as confidential

commercial information subject to protection under [then] Fed. R. Civ. P. 45(c)(3)(B)(i)."   *Id.* at

226-27.   "Further, even if [then] Fed. R. Civ. P. 45(c)(3)(B)(i) does not apply, the court may modify

or quash to protect individuals from undue annoyance as provided by Fed. R. Civ. P. 26(c)."   *Id.*

at 227.   The court protected the doctor's confidentiality interests by requiring that the phone

records be produced for *in camera* review rather than directly to the plaintiff.   *Id.* at 229; *cf. also*

---

[5]      In reaching this holding, the court rejected one of the arguments that Gallagher makes here.
Citing criminal cases, Gallagher argues that "telephone numbers are not protectable information."
(ECF No. 57, at 6 (citing *U.S. v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017)).)   Yet as the *Syposs* court
explained, the question of whether a person has a sufficiently "reasonable expectation of privacy
to avoid the need for a warrant under the Fourth Amendment for information created or maintained
by a commercial entity" is different from the question of whether she has an "interest in the
confidentiality of such records which may be protected against unregulated disclosure in response
to civil discovery requests."   *Syposs*, 181 F.R.D. at 227 (discussing *Smith v. Maryland*, 442 U.S.
735 (1979)).   "Confidential information that does not establish a constitutionally protected privacy
interest may nevertheless be entitled to protection against unwarranted public disclosure resulting
from discovery in federal civil litigation."   *Id.* (citing *Long v. Am. Red Cross*, 145 F.R.D. 658, 664
(S.D. Ohio 1993) and *Borzillieri v. Am. Nat'l Red Cross*, 139 F.R.D. 284, 288 (W.D.N.Y. 1991)).

*Tavares v. Lawrence & Mem. Hosp.*, No. 3:11-cv-770 (CSH), 2012 WL 4321961, at *11 (D. Conn. Sept. 20, 2012) (in ruling on motion to quash subpoena served upon plaintiff's marital therapist in an FMLA case, "the Court will not ignore the intrusion into the privacy of the marital therapy records of [a] non-party").

This Court finds *Syposs* persuasive, and accordingly it will direct that the Verizon Subpoena be modified to protect McGetrick's and her clients' privacy interests in the records of her inbound and outbound calls. Gallagher shall modify the subpoena so that the requested records are returnable to McGetrick or her counsel. McGetrick will then be permitted a ten-day period in which to examine the documents and redact any records of calls to or from phone numbers that she knows not to be associated in any way with Dapkus – for example, phone numbers belonging to her other therapy patients. McGetrick shall provide the redacted document to Gallagher within ten calendar days of receiving it from Verizon, and she may designate the document "CONFIDENTIAL" under the Standing Protective Order. (ECF No. 4.) McGetrick is further directed to preserve the unredacted document for the duration of this case, so that it will be available in the event that Dapkus testifies (whether at trial or in opposition to summary judgment) that she made and/or canceled the June 29, 2018 appointment from some phone number other than the two she referenced at her deposition.

## III.    Conclusion and Order

For the foregoing reasons:

(1)  That portion of Gallagher's Third Motion to Compel, ECF No. 47, that sought an order directing compliance with Request Nos. 4 and 5 in the First Set of Requests for Production dated March 23, 2020 is **DENIED AS MOOT**;

(2)  That portion of Gallagher's Third Motion to Compel, ECF No. 47, that sought an order directing compliance with Request No. 15 in the Second Set of Requests for Production dated September 21, 2020 is **DENIED AS MOOT**; but the denial is without prejudice to renewal in the event that Dapkus does not provide Gallagher with a sworn certification by January 18, 2021 certifying that she has no additional responsive documents to produce;

(3)  That portion of Gallagher's Third Motion to Compel, ECF No. 47, that sought an order directing Dapkus to cure deficiencies in her response to Request Nos. 1, 2 and 3 in the Third Set of Requests for Production dated October 24, 2020 is **DENIED AS MOOT**; but the denial is without prejudice to renewal in the event that Dapkus does not provide Gallagher with a sworn certification by January 18, 2021 certifying that she has no additional written communications between herself and McGetrick dated on or between July 8 and July 14, 2018;

(4)  That portion of Gallagher's Third Motion to Compel that sought an award of attorneys' fees is **DENIED**;

(5)  McGetrick's first Motion to Quash and for Protective Order, ECF No. 35, is **GRANTED**, and the subpoena served upon her by Gallagher on November 15, 2020 is **QUASHED**; and

(6)  McGetrick's second Motion to Quash, ECF No. 53, is **GRANTED IN PART AND DENIED IN PART.**  It is denied to the extent that it seeks to quash the Verizon Subpoena, but granted to the extent that it seeks to modify that subpoena. The Court directs that the Verizon Subpoena be **MODIFIED** so that the phone records are returnable to McGetrick or to McGetrick's counsel.  Within ten

16

calendar days of receiving the documents, McGetrick shall redact call detail records for any calls that she confirms were not between herself and Dapkus, and shall produce the redacted document to Gallagher's counsel.  She may designate the document thus produced as "CONFIDENTIAL" under the Standing Protective Order applicable to this case.  (ECF No. 4.)  McGetrick is ordered to preserve the unredacted document for the duration of this case.

This is not a Recommended Ruling.  It is a ruling by a magistrate judge on a "nondispositive motion[] . . . . relating to discovery," D. Conn. L. R. 72.1(C)(2), and as such it is reviewable pursuant to the "clearly erroneous" statutory standard of review.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b).  It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a).

So ordered this 11th day of January, 2021, at Hartford, Connecticut.

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge

17