# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN DAPKUS, | ) | 3:19-CV-01583 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARTHUR J. GALLAGHER SERVICE | ) | |
| COMPANY, LLC, | ) | |
| *Defendant*. | ) | APRIL 14, 2022 |

## MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 65)

Kari A. Dooley, United States District Judge

This matter arises out of the termination of Plaintiff, Susan Dapkus, from her employment with Defendant, Arthur J. Gallagher Service Company, LLC. In a two-count Complaint, Plaintiff alleges interference with her rights under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.,* and retaliation for her exercise of those rights. Pending before the Court is Defendant's motion for summary judgment as to all claims. Defendant's motion turns largely on whether Defendant's termination of Plaintiff's employment was a violation of her rights under the FMLA, where Plaintiff failed to provide Defendant with information necessary to verify the accuracy of her designation of medical leave under the FMLA. Because the Court finds that, as a matter of law Defendant's actions did not violate Plaintiff's rights under the FMLA, Defendant's motion for summary judgment is GRANTED.

**Standard of review**

The standard under which courts review motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

1

Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).

**Facts**[1]

Defendant hired Plaintiff on or about November 10, 2014 as an audit coordinator. (ECF No. 67, ¶ 1). In 2017, Plaintiff applied for intermittent medical leave in connection with her atypical migraines pursuant to the FMLA. (*Id.*, at ¶ 4). Plaintiff informed Defendant that her condition could cause blurred vision and impact her ability to speak, and that she was under the care of a healthcare provider for her condition.[2] (ECF No. 70-8, 17:18–22; 18:15–17). Plaintiff could not predict when she was going to have episodes of symptomatic atypical migraines or how long the residual effects of her migraines would last. (ECF No. 67, ¶¶ 9–10). Plaintiff estimated that the recovery time associated with her atypical migraines could be up to three days. (ECF No. 70-2, ¶ 10). During Plaintiff's employment, Defendant utilized Matrix Absence Management Inc. ("Matrix") as its third-party vendor to process and manage FMLA claims. (ECF No. 67, ¶ 3). In August of 2017, Matrix approved Plaintiff's application for intermittent medical leave under the

---

[1] The facts set forth are not in dispute, unless otherwise indicated.

[2] Plaintiff testified that in 2017, at the time she applied for FMLA leave, and into 2018, the only healthcare providers that were treating her condition were "Dr. Sinusas" and "Dr. Tucker." (ECF No. 66-1, 71: 4–8).

FMLA in connection with (1) episodes of symptomatic atypical migraines, and (2) medical appointments associated with her condition. (*Id*., at ¶¶ 5–6). Plaintiff filled out and signed weekly timesheets certifying the days that she designated as medical leave pursuant to the FMLA. (*Id*., at ¶¶ 7–8).

Throughout Plaintiff's employment, neither Defendant nor Matrix denied Plaintiff any requested time off for FMLA leave and Defendant approved all of Plaintiff's FMLA designations. (*Id*., at ¶ 72). Plaintiff acknowledges that Defendant encouraged her to take FMLA leave whenever she needed it. (*Id*., at ¶¶ 75, 78). Notwithstanding Defendant's approval of Plaintiff's FMLA designations and encouragement to request FMLA leave when necessary, Defendant began to question the accuracy and honesty of Plaintiff's designations of FMLA leave.

On Wednesday, November 15, 2017, Plaintiff emailed Angela Salvi, Defendant's Batch Operations Manager, stating: "Due to some home construction I 'may be' taking some time off on [Monday] the 20th and [Tuesday] 21st. . . . This will fall under FMLA time. . . ." (*Id*., at ¶ 11). Plaintiff did not have a medical appointment related to her condition on November 20th or 21st. (*Id*., at ¶ 12). Plaintiff signed her timesheet for the week ending November 26, 2017, which designated the time off from her employment on November 20th and 21st as medical leave under the FMLA. (*Id*., at ¶ 13). Plaintiff denies that she utilized the FMLA-designated time for home construction on November 20th or 21st. (ECF No. 70-2, ¶ 14). Instead, Plaintiff subsequently notified Defendant that she experienced episodes of symptomatic atypical migraines on those dates. (*Id*.; ECF No. 70-8, 29:18–25).

On Friday, December 15, 2017, Plaintiff emailed Ms. Salvi, stating: "I may be out on Monday the 18th as a FMLA." (ECF No. 67, ¶ 16). Plaintiff does not recall whether she experienced an episode of a symptomatic atypical migraine on December 15th. (ECF No. 70-14, 22:6–8).

Plaintiff did not have a medical appointment related to her condition on December 18th. (ECF No. 67, ¶ 17). Plaintiff signed her timesheet for the week ending December 24, 2017, which designated the time off from her employment on December 18th as medical leave under the FMLA. (*Id*., at ¶¶ 18–19).

On Friday, January 19, 2018, Plaintiff emailed Ms. Salvi, stating: "I'll be out on Monday, Jan. 22nd—FMLA day." (*Id*., at ¶ 20). Plaintiff did not have a medical appointment related to her condition on January 22nd. (*Id*., at ¶ 21). Plaintiff signed her timesheet for the week ending January 28, 2018, which designated the time off from her employment on January 22nd as medical leave under the FMLA. (*Id*., at ¶¶ 22–23). Plaintiff subsequently testified that she designated this time off from her employment as medical leave under the FMLA because she was still recovering from residual effects of episodes of symptomatic atypical migraines. (ECF No. 70-14, 24:8–19).

In February of 2018, Ms. Salvi grew suspicious of Plaintiff's designation of time off from her employment as FMLA-qualifying. (ECF No. 67, at ¶ 24). Specifically, Ms. Salvi observed that Plaintiff previously requested medical leave for purposes of home construction, regularly requested medical leave to extend her weekends, and regularly requested medical leave in advance for a condition described as having an unpredictable onset and of variable duration. (*Id*.). On February 7, 2018, Karen Cole, Defendant's Senior Benefits Specialist, emailed Plaintiff to explain that only time off from employment in connection with her approved medical condition could be designated as intermittent medical leave under the FMLA. (*Id*., at ¶ 25). Ms. Cole reminded Plaintiff that home construction did not qualify for medical leave under the FMLA. (*Id*.).

On Monday, March 19, 2018, Plaintiff called out of work, stating that she will be taking the day off because she had to put her cat down. (*Id*., at ¶ 27). Thereafter, on March 23, 2018, Plaintiff emailed Ms. Salvi stating: "I had to take a FMLA day on 3/19." (*Id*., at ¶ 29). In response,

Ms. Salvi inquired as to the circumstances of Plaintiff's absence, and informed Plaintiff that time off from employment in connection with the care of her cat would not be eligible for designation as medical leave under the FMLA. (*Id.*, at ¶ 30). Plaintiff replied to Ms. Salvi explaining that "[t]he stress of the situation [involving her cat] set off a migraine." (ECF No. 66-1, 217). Plaintiff did not have a medical appointment related to her condition on March 19th. (ECF No. 67, at ¶ 28). Plaintiff signed her timesheet for the week ending March 25, 2018, which designated the time off from her employment on March 19th as medical leave under the FMLA. (*Id.*, at ¶¶ 32–33).

On Friday, April 6, 2018, Plaintiff emailed Ms. Salvi, stating that she would "be out on [Monday,] April 9th." (*Id.*, at ¶ 34). Plaintiff does not recall experiencing episodes of symptomatic atypical migraines on April 6th or April 9th. (*Id.*, at ¶ 35). Plaintiff did not have a medical appointment related to her condition on April 9th. (*Id.*, at ¶ 36). Plaintiff signed her timesheet for the week ending April 15, 2018, which designated the time off from her employment on April 9th as medical leave under the FMLA. (*Id.*, at ¶¶ 37–38).

In June 2018, Ms. Salvi transitioned to a new role and Plaintiff began reporting to Lisa Walicki, Senior Vice President. (*Id.*, at ¶ 39). Ms. Salvi continued to assist Ms. Walicki through July of 2018 and the remainder of Plaintiff's employment. (*Id.*, at ¶ 40; ECF No. 70-2, ¶ 40). Ms. Salvi told Ms. Walicki of her suspicion that Plaintiff was improperly designating time off from her employment as medical leave under the FMLA. (ECF No. 67, ¶ 41). Specifically, Ms. Salvi informed Ms. Walicki of her observations that Plaintiff requested medical leave pursuant to the FMLA for purposes such as home construction and putting her cat down, and regularly extended her weekends by taking intermittent medical leave. (*Id.*).

On Monday, June 25, 2018, Plaintiff sent two emails to Ms. Walicki and Ms. Salvi. (*Id.*, at ¶ 42). The first email stated: "On [Friday,] 6/29 I will be out all day under FMLA." (*Id.*). The

second email requested three hours of medical leave on Monday, July 2nd, and indicated that Plaintiff would take paid time off on Tuesday, July 3rd.[3] (*Id.*). Ms. Salvi was suspicious of Plaintiff's advanced requests for medical leave pursuant to the FMLA around the Fourth of July holiday, particularly because she was aware that Plaintiff traditionally worked at her brother's fireworks stand during that time. (*Id.*, at ¶¶ 43–44). Ms. Salvi emailed Plaintiff inquiring whether the requested FMLA leave was for medical appointments related to her condition. (*Id.*, at ¶ 46). Plaintiff responded: "Yes, this is for scheduled FMLA appointments." (*Id.*, at ¶ 48). Plaintiff signed her timesheet for the week ending July 1, 2018, which designated the time off from her employment on June 29th as medical leave under the FMLA. (*Id.*, at ¶ 47). With respect to Plaintiff's request for medical leave on July 2nd, Ms. Salvi subsequently testified that Plaintiff did not take time off from her employment on July 2nd or notify Defendant that she was rescinding her request for medical leave on that date. (ECF No. 70-8, 34:1–6). Rather, Plaintiff worked all of July 2nd at her employment with Defendant. (*Id.*).

Upon receiving Plaintiff's requests on June 25, 2018, Ms. Salvi notified Ms. Cole of her suspicion regarding Plaintiff's advanced requests for FMLA leave. (ECF No. 67, ¶ 53). Ms. Cole contacted Matrix to verify Plaintiff's legitimate use of FMLA leave. (*Id.*, at ¶ 54). On June 28, 2018, Anthony Manginelli, Matrix's Integrated Claims Examiner assisting with Plaintiff's FMLA leave, called Plaintiff and requested the identity and contact information of the healthcare provider she claimed to have an appointment with on June 29th so that Matrix could confirm the existence of the appointment. (*Id.*, at ¶ 56). Plaintiff did not provide the healthcare provider's information during the call. (*Id.*, at ¶ 57).

---

[3] Plaintiff testified that she was working at her brother's fireworks stand on July 3, 2018. (ECF No. 70-2, ¶ 55).

Thereafter, Defendant and Matrix repeatedly attempted to ascertain the identity and contact information of the healthcare provider Plaintiff claimed to have an appointment with on June 29th so that the legitimacy of Plaintiff's designation of FMLA leave could be verified. On June 28, 2018, Mr. Manginelli emailed Plaintiff requesting the healthcare provider's name. (*Id.*, at ¶ 58). On July 11, 2018, Mr. Manginelli left two voicemails for Plaintiff again requesting the name and contact information of the healthcare provider and imposing a deadline of July 25, 2018 by which Plaintiff was to provide the information. (*Id.*, at ¶¶ 59–60). Plaintiff did not provide Defendant or Matrix the healthcare provider's information by the July 25th deadline. (*Id.*, at ¶ 61). On July 26, 2018, Mr. Manginelli left another voicemail for Plaintiff again requesting the name and contact information of the healthcare provider. (*Id.*, at ¶ 62). Mr. Manginelli emailed Plaintiff extending the deadline to provide the requested information, stating: "the doctor's information needs to be provided to Matrix by end of day today July 26, 2018. You must provide the requested provider information to us by end of day today which is a hard deadline." (*Id.*, at ¶ 63). Ms. Cole responded to this email clarifying that the end of the day meant 4:00 PM CST/5:00 PM EST. (*Id.*, at ¶ 64). Plaintiff did not provide the contact information for the healthcare provider by the July 26th, 4:00 PM CST/5:00 PM EST deadline. (*Id.*, at ¶ 65). However, on July 26, 2018 at 8:34 PM, Plaintiff emailed Mr. Manginelli, identifying Dr. Kate McGetrick, a psychologist from Rise Therapy and Wellness, as the healthcare provider with whom she claimed to have a June 29th appointment.[4] (*Id.*,

---

[4] Plaintiff testified at her deposition that she requested June 29th off because she had an appointment with Dr. McGetrick. (*Id.*, at ¶ 49). Plaintiff further testified that she ultimately did not meet with Dr. McGetrick on June 29th and called Dr. McGetrick from her home phone that morning to cancel the appointment because she woke up with a migraine. (*Id.*, at ¶¶ 50–51). Plaintiff attested that the only phones she utilized in June of 2018 were her home phone and cell phone. (*Id.*, at ¶ 52). However, Dr. McGetrick's phone number does not appear on Plaintiff's home phone or cell phone records for June of 2018. (*Id.*, at ¶¶ 85, 87–88). Moreover, Dr. McGetrick has no record, or memory, of any contact with Plaintiff in June of 2018. (*Id.*, at ¶ 89). There is no record of any intake conversation; the scheduling of a June 29, 2018 appointment or the cancellation of such an appointment. (*Id.*, at ¶¶ 85, 87, 89). The earliest available record of any contact between Plaintiff and Dr. McGetrick is from mid-July 2018, the same time that Matrix was pressing Plaintiff for the name and contact information of the healthcare provider she purportedly had an appointment with on June 29, 2018. (*Id.*, at ¶¶ 90–92).

at ¶ 66). Plaintiff did not direct the email to any of Defendant's employees until after she was terminated. (*Id.*, at ¶ 67).

Defendant terminated Plaintiff's employment the morning of July 27, 2018. (*Id.*, at ¶ 69). In the termination letter, Defendant informed Plaintiff that she was terminated because she did not disclose the identity and contact information of the healthcare provider as requested by the extended July 26th deadline. (*Id.*, at ¶ 71; ECF No. 66-1, 280). The termination letter additionally noted that Plaintiff abused Defendant's FMLA policy and failed to cooperate with Matrix and Defendant's leave administration staff. (ECF No. 66-1, 280).

On October 8, 2019, Plaintiff filed a Complaint against Defendant alleging retaliation and interference with her rights under the FMLA. (ECF No. 1). In count one of the Complaint, Plaintiff claims that Defendant retaliated against her for exercising her rights under the FMLA by terminating her employment. (ECF No. 1, ¶ 38). In count two of the Complaint, Plaintiff claims that Defendant interfered with her rights under the FMLA by terminating her employment while she was actively utilizing intermittent medical leave. (ECF No. 1, ¶ 41).

**Discussion**

"The [FMLA] . . . provides broad protections to employees who need to take time away from work to deal with serious health conditions of the employee or her family. . . . The FMLA also creates a private right of action to seek both equitable relief and money damages against any employer . . . in any Federal or State court of competent jurisdiction should that employer interfere with, restrain, or deny the exercise of FMLA rights." *Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 165–66 (2d Cir. 2017) (internal quotation mark omitted).

"FMLA claims come in at least two varieties: interference and retaliation. . . . In a general sense, an employee brings an 'interference' claim when her employer has prevented or otherwise

impeded the employee's ability to exercise rights under the FMLA. . . . 'Retaliation' claims, on the other hand, involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer. . . . The two types of claims serve as ex ante and ex post protections for employees who seek to avail themselves of rights granted by the FMLA." *Id.*, at 166 (citations omitted).

With respect to Plaintiff's retaliation claim, Defendant argues that Plaintiff's prima facie case for retaliation fails because there is no evidence that Plaintiff's termination occurred under circumstances giving rise to an inference of retaliatory motive. Specifically, Defendant argues that because it is undisputed that Defendant had a good faith belief that Plaintiff was misusing her FMLA leave and undisputed that Plaintiff failed to meet the July 26th deadline to provide the requested healthcare provider's information, no such inference is supported by evidence of record. Alternatively, Defendant argues that, even if Plaintiff could establish a prima facie case of retaliation, Plaintiff cannot adduce any evidence to establish that Defendant's legitimate, non-retaliatory reason supporting its decision to terminate her employment was pretextual. Specifically, Defendant avers that, as confirmed through discovery, its good faith belief that Plaintiff was misusing her FMLA time was in fact accurate and, because Plaintiff falsely reported having a medical appointment on June 29th, she cannot establish pretext as a matter of law. *See*, *infra*, footnote 4 of this opinion.

With respect to Plaintiff's interference claim, Defendant argues that Plaintiff's prima facie case for interference fails because there is no evidentiary basis to support the conclusion that Defendant denied Plaintiff any FMLA benefits to which she was entitled. To the contrary, Defendant contends that the undisputed record establishes that Defendant supported and actively encouraged Plaintiff to seek any FMLA leave that she needed, never denied her any FMLA leave

and accommodated Plaintiff's use of FMLA leave without issue for approximately eleven months prior to her termination.

In opposing summary judgment, with respect to both claims, Plaintiff relies exclusively on the proposition that the FMLA prohibits an employer from demanding a healthcare provider's name and contact information in order to verify the legitimacy of an employee's FMLA use. Plaintiff does not provide any legal authority for this proposition. Plaintiff cites generally to the FMLA recertification process, which governs where an employer questions an employee's continued need for intermittent FMLA leave in connection with a qualifying medical condition. *See Geromanos v. Columbia Univ.*, No. 02 CIV.7181 CM, 322 F. Supp. 2d 420, 431 (S.D.N.Y. June 14, 2004) (FMLA "limitation [regarding subsequent recertifications] prevents employers from requiring plaintiffs to repeatedly prove that they do in fact suffer from a serious health condition entitling them to leave.") (citing 29 C.F.R. § 825.308).

In reply, Defendant argues that the recertification procedures are irrelevant and not implicated because Defendant did not dispute Plaintiff's entitlement to intermittent medical leave in connection with episodes of symptomatic atypical migraines or that Plaintiff's use of intermittent medical leave fell below the time allotted to her under her FMLA Certification. Rather, Defendant questioned Plaintiff's honesty in designating FMLA leave for approved purposes related to her condition and, within its authority, sought verification of her claimed FMLA use. Each of these arguments are addressed below.

**Retaliation**

 "We analyze FMLA retaliation claims under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). . . . To establish a prima facie case of retaliation under the FMLA, a plaintiff must

demonstrate that: (1) she exercised rights protected under the FMLA; (2) she was qualified for [her] position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Greenberg v. State Univ. Hosp. – Downstate Med. Ctr.*, 838 F. App'x 603, 606 (2d Cir. 2020) (citation omitted; internal quotation marks omitted).[5]

"If the plaintiff makes out a prima facie case, the defendant must demonstrate a legitimate, non-discriminatory reason for its actions. . . . [T]he plaintiff must then show that [the] defendant's proffered explanation is pretextual. . . . The plaintiff may satisfy this burden by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered reason, . . . or by providing evidence such that a reasonable factfinder could conclude that the prohibited reason was a 'motivating factor' in the adverse employment action." *Id.* (citations omitted).

The parties primarily dispute the fourth element of Plaintiff's prima facie case of retaliation—whether Plaintiff's termination occurred under circumstances giving rise to an inference of retaliatory intent. Plaintiff argues that Defendant impermissibly demanded her healthcare provider's name and contact information[6] in order to verify her legitimate FMLA use, and that Defendant's failure to invoke the recertification procedures under the FMLA gives rise to

---

[5] Plaintiff contends that she "has persuasive direct evidence of [D]efendant's retaliatory intent." (ECF No. 70-1 at 24). Specifically, Plaintiff argues that Defendant terminated her employment notwithstanding Matrix's instruction that Plaintiff was not abusing the FMLA and to utilize the FMLA recertification procedures in the event Defendant was inclined to verify the legitimacy of Plaintiff's FMLA use. (*Id.*). Plaintiff mischaracterizes the record. In an email dated February 14, 2018, more than five months prior to Plaintiff's termination, Matrix informed Defendant that there was no evidence establishing that Plaintiff was abusing FMLA leave at that time. (ECF No. 70-10). This inquiry was specifically with respect to Plaintiff's request for FMLA leave on November 20 and 21, 2017 "[d]ue to some home construction." (*Id.*). The record does not indicate that Matrix opined as to whether Defendant's actions were proper with respect to verifying Plaintiff's FMLA designation on June 29th or terminating her employment thereafter. Because the Court does not find direct evidence of retaliatory intent, it considers Plaintiffs claim of retaliation under the *McDonnell Douglas* standard. *See Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*, No. 10 Civ. 6101 (VM), 862 F. Supp. 2d 311, 317 (S.D.N.Y. May 4, 2012) ("Where, as here, a plaintiff alleges an FMLA retaliation claim without direct evidence of the employer's retaliatory intent, the claim is evaluated under the burden-shifting framework set forth in *McDonnell Douglas*.").

[6] Plaintiff mischaracterizes Defendant's request as one to obtain a "doctor's note" rather than simply a request for the healthcare provider's name and contact information.

an inference of retaliatory intent.[7] In reply, Defendant argues that the FMLA recertification procedures were not implicated in this instance and that therefore Plaintiff has not adduced any evidence that may reasonably give rise to an inference of retaliatory intent. The Court agrees with Defendant.

Although the "FMLA permits an employer to require that employees substantiate a request for leave for treatment of a serious health condition by submitting a medical certification issued by the health care provider [and] also allows the employer to require subsequent recertifications on a reasonable basis," *Geromanos*, 322 F. Supp. 2d at 431, this was not the situation in Plaintiff's case. In *Geromanos v. Columbia University*, the defendant required plaintiff to submit progress reports on her treatment for an FMLA-qualifying medical condition. *Id*. Defendant required the reports to ensure that plaintiff was actually undergoing treatment, which was a condition of both receiving full salary while on leave and continued employment after its expiration. *Id*. Plaintiff argued that Defendant's reporting requirement violated her rights under the FMLA because the progress reports concerning her treatment constituted certifications, which were subject to the procedural requirements set forth in 29 C.F.R. § 825.308. *Id*. The court disagreed with Plaintiff that the FMLA certification procedures were applicable because "whether plaintiff actually suffered from a serious health condition does not seem to have been questioned by [defendant]."

---

[7] Plaintiff also contends that temporal proximity between her FMLA leave usage and her termination bespeak a retaliatory motive. Specifically, Plaintiff argues that her termination on July 27, 2018, following her then most recent use of FMLA leave on July 19, 2018 supports an inference of retaliatory motive. "Mere [t]emporal proximity, standing alone, is insufficient to carry plaintiff's burden at [the pretext analysis]." *Brown v. The Pension Boards*, No. 04 Civ. 10062(RWS), 488 F. Supp. 2d 395, 410 (S.D.N.Y. May 21, 2007) (internal quotation mark omitted; alterations in original). Moreover, "the purported temporal overlap between [Plaintiff's] usage of FMLA leave and her termination also does not help her case given the fact that [Defendant] approved her use of FMLA leave . . . [throughout her employment and] before her termination without incident." *Lopez v. Chubb & Son*, No. 3:16-CV-00934 (MPS), 2018 WL 4211324, at *7 (D. Conn. Sept. 4, 2018). "Courts have held that any inference of discrimination raised by temporal proximity is undercut by an employer's prior approval of numerous FMLA leave requests without incident." *Id*. Thus, Defendant's approval of Plaintiff's FMLA leave on July 19, 2018 bolsters Defendant's argument that no genuine issue of material fact exists as to whether it retaliated against Plaintiff because, notwithstanding Plaintiff's failure to disclose the healthcare provider's information, Plaintiff continued exercising her rights under the FMLA without issue.

*Id.* Specifically, the court found that "[t]here [was] absolutely no evidence that [defendant] ever questioned plaintiff's illness." *Id.* Although the court noted that "the certification procedures . . . should be employed if there is doubt that an employee suffers from a serious medical condition," the court ultimately concluded that defendant's decision to terminate plaintiff for failing to provide the reports was "not a per se violation of FMLA" because "[defendant] [had] not disputed that plaintiff suffered from a serious medical condition." *See id.*, at 432–33 ("there [was] no evidence that [defendant] ever intimated that plaintiff was not entitled to be on FMLA leave, which is the concern that limiting recertification is intended to address").

Similarly, here, Plaintiff has presented no evidence tending to demonstrate that Defendant questioned Plaintiff's entitlement to intermittent medical leave under the FMLA in connection with episodes of symptomatic atypical migraines or her treatment for the same. To the contrary, Defendant accepted and accommodated her need for intermittent leave and encouraged her to use her FMLA leave whenever she needed to. Accordingly, the Court concludes that the request for the name and contact information of Plaintiff's treatment provider did not implicate or therefore violate the recertification requirements,[8] and that no reasonable factfinder could conclude that Defendant's request for the healthcare provider's information under these circumstances gives rise to an inference that Plaintiff was terminated for using FMLA leave. There is no genuine issue of

---

[8] It is also worth noting that 29 C.F.R. § 825.307 (a) provides in relevant part: "Clarification and authentication. If an employee submits a complete and sufficient certification signed by the health care provider, the employer may not request additional information from the health care provider. However, the employer may contact the health care provider for purposes of clarification and authentication of the medical certification (whether initial certification or recertification) after the employer has given the employee an opportunity to cure any deficiencies. . . . For purposes of these regulations, authentication means providing the health care provider with a copy of the certification and requesting verification that the information contained on the certification form was completed and/or authorized by the health care provider who signed the document. . . . Clarification means contacting the health care provider to understand the handwriting on the medical certification or to understand the meaning of a response." Accordingly, Defendant's requests for the healthcare provider's name and contact information do not fall within the meaning of either "authentication" or "clarification" as set forth under the FMLA, further supporting the conclusion that Defendant's conduct did not implicate the recertification process.

material fact on this issue and Plaintiff cannot make out a prima facie case of retaliation as a matter of law.

Even if Plaintiff were to establish a prima facie case of retaliation, Plaintiff failed to demonstrate a genuine issue of material fact that Defendant's proffered justification for terminating her employment was mere pretext. In Plaintiff's termination letter, Defendant informed Plaintiff that she was terminated because she failed to disclose the healthcare provider's name and contact information by the extended July 26th deadline. (ECF No. 67, ¶ 71; ECF No. 66-1, 280). The termination letter additionally noted that Plaintiff abused Defendant's FMLA policy and failed to cooperate with Matrix and Defendant's leave administration staff. (ECF No. 66-1, 280). Further, Ms. Walicki subsequently testified that Plaintiff's termination was based on her dishonesty and failure to provide the healthcare provider's information by the imposed deadline. (ECF No. 70-2, ¶ 2; ECF No. 78, ¶ 2).

As an initial matter, Plaintiff concedes that it was reasonable for Defendant to suspect that she was abusing her FMLA leave. (*See* ECF No. 67, ¶ 45) ("Plaintiff acknowledges that it was reasonable for [Defendant] to be suspicious of her taking FMLA time off days in advance for multiple days around the 4th of July holiday."); (*see id*., at ¶ 31) ("Plaintiff testified it was reasonable [for Defendant] to question whether her March 19, 2018 FMLA request was proper after she stated she was taking the day off to put her cat down."); (*see* ECF No. 66-1, 126:22–25, 127:1–2) (Plaintiff agreeing that it was reasonable for Defendant "to question [her] use of FMLA time because they were tied to home construction, putting down [her] cat, and around the 4th of July holiday"). And it was based upon this good faith belief[9] that Defendant demanded Plaintiff

---

[9] Plaintiff argues that Defendant failed to meet its burden of producing a legitimate, non-discriminatory reason for her termination. Specifically, Plaintiff contends that Defendant's "honest belief" that Plaintiff was abusing the FMLA is not credible because, in an email dated February 14, 2018, more than five months prior to Plaintiff's termination, Matrix informed Defendant that there was no evidence establishing Plaintiff's abusing of FMLA leave at that time.

provide the healthcare provider's information to verify the legitimacy of her June 29th FMLA

designation. More critically, Plaintiff testified that she was terminated because she did not provide

the healthcare provider's information by the imposed deadline. (ECF No. 67, at ¶ 71). Thus,

Plaintiff conceded that there is no causal connection between her termination and the exercise of

her FMLA rights.

Ultimately, on these facts, a reasonable factfinder could conclude only that Defendant

terminated Plaintiff's employment because of her noncompliance with Matrix and Defendant's

leave administration staff by failing to disclose the healthcare provider's name and contact

information, or her noncompliance with the FMLA in light of Defendant's good faith belief that

she was misusing her intermittent medical leave.[10] *See Mejia v. Roma Cleaning, Inc.*, 751 F. App'x

134, 137 (2d Cir. 2018) (explaining that the "FMLA is not a shield to protect employees from

legitimate disciplinary action by their employers if their performance is lacking in some manner

unrelated to their FMLA leave"). Accordingly, Plaintiff has not identified any weakness or

implausibility in Defendant's justification and there is insufficient basis for a reasonable factfinder

---

(ECF No. 70-10). The Court finds Plaintiff's argument unpersuasive in light of her concession that it was reasonable for Defendant to suspect that she was abusing FMLA leave. *See Shah v. Eclipsys Corp.*, No. 08-CV-2528 (JFB), 2010 WL 2710618, at *10 (E.D.N.Y. July 7, 2010) ("To be a valid legitimate, nondiscriminatory reason for termination, an employer's belief need not be correct, only honestly held."). Moreover, Defendant's "burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation mark omitted). Defendant met this burden by offering admissible evidence sufficient for the trier of fact to conclude that Plaintiff was terminated because of her failure to provide the healthcare provider's information so Defendant could investigate its good faith belief that Plaintiff was abusing FMLA leave.

[10] Plaintiff argues that a jury could reasonably infer that Defendant's proffered justification for her termination employment was pretextual because "Defendant misidentified the actual decision-maker and did so for a lengthy period of time." Specifically, in Defendant's response to Interrogatory No. 16, dated August 6, 2020, Defendant identified Ms. Cole as the individual who made the decision to terminate Plaintiff's employment. (ECF No. 70-7, ¶ 16). However, in Defendant's subsequent response to Interrogatory No. 16, dated December 15, 2020, Defendant stated that Ms. Walicki and Ms. Salvi with input and guidance from human resources made the decision to terminate Plaintiff's employment. (ECF No. 70-19, ¶ 16). Ms. Salvi further testified that Ms. Cole was involved in the termination decision. (ECF No. 70-8, 10:14–15). The Court is not persuaded that, to the extent there is inconsistency between Defendant's interrogatory responses, Defendant intentionally concealed the identity of the individuals who were involved in the decision to terminate Plaintiff's employment, or inadvertently did so for a sufficient length of time to prejudice Plaintiff. Accordingly, Plaintiff cannot establish a genuine issue of material fact that Defendant's proffered justification for her termination employment was pretextual.

to conclude that Plaintiff's use of FMLA leave was a motivating factor in her termination.[11] *See Worster v. Carlson Wagonlit Travel, Inc*., No. 3:02 CV 167 EBB, 2005 WL 1595596, at *2 (D. Conn. July 6, 2005), *aff'd*, 169 F. App'x 602 (2d Cir. 2006) ("an employer who honestly believes that it is terminating an employee who obtained FMLA leave fraudulently will not be liable even if the employer is mistaken in its belief"); *see Alexander v. The Bd. of Educ. of New York*, 648 F. App'x 118, 120–21 (2d Cir. 2016) ("Given the misuse of [Plaintiff's FMLA] leave, there was a non-retaliatory basis for terminating [Plaintiff's] employment."); *see also*, *Seeger v. Cincinnati Bell Tel. Co.,* 681 F.3d 274, 284 (6th Cir. 2012) (holding that, in the FMLA context, "fraud and dishonesty constitute lawful, non-discriminatory bases for termination"); *see also*, *Scruggs v Carrier Corp.,* 688 F.3d 821, 826 (7th Cir. 2012) (concluding that, where employer had "honest suspicion" that employee submitted false paperwork and misused FMLA leave, employee's termination did not violate the FMLA).

**Interference**

Plaintiff claims that Defendant interfered with her rights under the FMLA by terminating her employment while she was actively utilizing intermittent medical leave. (ECF No. 1, ¶ 41). "[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am*., 817 F.3d 415, 424 (2d Cir. 2016). "The regulations promulgated pursuant to the FMLA explain that '[i]nterfering with the exercise

---

[11] Plaintiff further testified that she does not believe that Ms. Salvi, Ms. Walicki, Ms. Cole or Ms. Tejeda retaliated against her for taking FMLA leave. (ECF No. 67, ¶ 74, 77, 80, 82).

of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.'" *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004) (citing 29 C.F.R. § 825.220(b)).

Plaintiff argues that Defendant's demand for the healthcare provider's information constituted interference with the exercise of her rights under the FMLA. As set forth above, the Court finds that Defendant's requests did not violate the FMLA, and therefore did not constitute an interference with her rights under the Act. Moreover, Plaintiff concedes that Defendant granted every medical leave that she requested pursuant to the FMLA without incident throughout her employment. (ECF No. 67, ¶ 72). Plaintiff further acknowledges that Defendant encouraged her to take FMLA leave whenever she needed it. (*Id*., at ¶¶ 75, 78).[12] "The law is clear that an employee may be terminated while on medical leave, as long as the taking of the FMLA leave was not the cause for the termination." *Geromanos*, 322 F. Supp. 2d at 428 (citations omitted). There is no evidence in the record from which a reasonable factfinder could conclude that Plaintiff was denied any benefit to which she was entitled or even that she was discouraged from exercising her rights under the FMLA. As there is no genuine issue of material fact that Plaintiff was not "denied benefits to which she was entitled under the FMLA," *Graziadio* 817 F.3d at 424, Defendant is entitled to summary judgment on the interference claim as well.

**Conclusion**

For all of the foregoing reasons, the Defendant's motion for summary judgment is GRANTED.

---

[12] Plaintiff testified that she does not believe that Ms. Salvi, Ms. Walicki, Ms. Cole or Lee Ann Tejeda, Defendant's Human Resource Representative, interfered with her ability to take FMLA leave. (*Id*., at ¶¶ 73, 76, 79, 81).

The Clerk of the Court is directed to enter judgment in favor of the Defendant on the Plaintiff's Complaint and to close the case.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of April 2022.

 _/s/ Kari A. Dooley_

KARI A. DOOLEY

UNITED STATES DISTRICT JUDGE